IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:18-CV-201-RJ

RICKIE LEROY COURT,

    Plaintiff/Claimant,

v.

ANDREW SAUL,
Commissioner of Social Security,

    Defendant.

O R D E R

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-22, -24] pursuant to Fed. R. Civ. P. 12(c). Claimant Rickie Leroy Court ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Claimant's Motion for Judgment on the Pleadings is denied, Defendant's Motion for Judgment on the Pleadings is allowed, and the final decision of the Commissioner is upheld.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on July 9, 2015, and he protectively filed an application for SSI on September 9, 2015, alleging disability in both applications beginning December 6, 2011. (R. 17, 250–67). Both claims were denied initially and upon reconsideration. (R. 17, 99–148). A hearing before the Administrative Law Judge ("ALJ")

was held on February 20, 2018, at which Claimant, represented by a non-attorney representative, and a vocational expert ("VE") appeared and testified. (R. 17, 43–98). On August 14, 2018, the ALJ issued a decision denying Claimant's request for benefits. (R. 14–42). Claimant then requested a review of the ALJ's decision by the Appeals Council (R. 248–49), and he submitted additional evidence as part of his request (R. 2). The Appeals Council did not exhibit the additional evidence because it was not new; it was a copy of evidence already in the record. *Id.* The Appeals Council denied Claimant's request for review on October 30, 2018. (R. 1–5). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R.

2

§ 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)–(c) and 416.920a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

3

In this case, Claimant alleges the following errors: (1) the ALJ improperly weighed the opinions of Claimant's treating providers and (2) the ALJ erred in determining that Claimant's statements were not entirely consistent with the medical and other evidence. Pl.'s Mem. [DE-23] at 4–22.

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had engaged in substantial gainful activity from January 2017 to December 2017, but there were continuous twelve-month periods during which Claimant did not engage in substantial gainful activity from January 2012 to December 2016 and from January 2018 to the present. (R. 20–21). Next, the ALJ determined Claimant had the following severe impairments: degenerative disc disease, dysfunction of major joints related to the feet and ankles, essential hypertension, diabetes mellitus, obesity, sleep apnea, and peripheral vascular disease. (R. 21). The ALJ also found Claimant had nonsevere impairments of chronic obstructive pulmonary disease ("COPD") and depressive, bipolar, and related disorders. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 23–24). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in no limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself. (R. 22).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform medium work[1] except that he can frequently climb ramps and stairs;

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing

4

occasionally climb ladders, ropes, or scaffolds; frequently balance, stoop, kneel, crouch, and crawl; and never work at unprotected heights or around moving mechanical parts. (R. 24–32). In making this assessment, the ALJ found Claimant's statements about the intensity, persistence, and limiting effects of his symptoms not entirely consistent with the medical and other evidence. (R. 25). At step four, the ALJ concluded Claimant had the RFC to perform the requirements of his past relevant work as a phlebotomist. (R. 33). In the alternative, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 34–35).

## V. DISCUSSION

### A.     The ALJ did not err in weighing the opinion evidence.

Claimant contends the ALJ erred in weighing the opinions of A. Timothy Seavers, D.P.M., and Doug Barrow, M.D. Pl.'s Mem. [DE-23] at 4–20. When assessing a claimant's RFC, the ALJ must consider the opinion evidence. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Regardless of the source, the ALJ must evaluate every medical opinion received. *Id.* §§ 404.1527(c), 416.927(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* §§ 404.1527(c)(1), 416.927(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources such as consultative examiners. *Id.* §§ 404.1527(c)(2), 416.927(c)(2). When the opinion of a treating source regarding the nature and severity of a claimant's impairments is "well-

---

up to 25 pounds. If someone can do medium work, he can also do sedentary and light work. 20 C.F.R. §§ 404.1567(c), 416.967(c).

5

supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence," it is given controlling weight. *Id.* However, "[i]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590.

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). An ALJ may not reject medical evidence for the wrong reason or no reason. *See Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006). "In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) (citations omitted). However, "[a]n ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' or has failed to give a sufficient reason for the weight afforded a particular opinion." *Dunn v. Colvin*, 607 F. App'x 264, 267 (4th Cir. 2015) (quoting *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992)).

### 1. Dr. Seavers's November 2017 and February 2018 opinions

In both November 2017 and February 2018, Dr. Seavers wrote, "In my opinion, this patient is 100% disabled from any standing or ambulating positions." (R. 1855, 1857). The ALJ offered

three reasons for discounting the opinions: they addressed an issue reserved to the Commissioner, Dr. Seavers saw Claimant inconsistently and infrequently, and the opinions were inconsistent with Claimant's intact gait and work activity. (R. 31).

First, Dr. Seavers opined that Claimant was disabled from any standing or ambulating position, and that determination is an issue reserved to the Commissioner. *See* S.S.R. 96-5p, 1996 WL 374183, at *5 (July 2, 1996) ("The judgment regarding the extent to which an individual is able to perform exertional ranges of work goes beyond medical judgment regarding what an individual can still do and is a finding that may be dispositive of the issue of disability. . . . [T]he overall RFC assessment is an administrative finding on an issue reserved to the Commissioner."); *Slaydon v. Saul*, No. 7:18-CV-54-FL, 2019 WL 3660573, at *5 (E.D.N.C. Aug. 6, 2019) ("Medical source opinions on issues reserved to the Commissioner are not entitled to any weight."); *Watson v. Berryhill*, No. 5:17-CV-579-RJ, 2018 WL 6600209, at *1 (E.D.N.C. Dec. 17, 2018). Nonetheless, the ALJ is required to "properly weigh the medical findings and other evidence supporting the medical source's opinion." *Slaydon*, 2019 WL 3660573, at *5 (citing *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 256 (4th Cir. 2017)). Dr. Seavers's opinions addressed Claimant's ability to perform jobs that require standing or ambulating, and the ALJ extensively discussed Claimant's ability to stand and walk. (R. 24–32). The ALJ discussed Claimant's testimony that he can walk a few hundred feet and stand for five to ten minutes, his treatment for his back pain that affected his ability to walk, the fracture of Claimant's fibula in 2014 and subsequent treatment, his podiatry appointments in 2016 and 2017, and his laser treatment. (R. 25–29). In summary, the ALJ determined that Dr. Seavers's November 2017 and February 2018 opinions were on an issue reserved to the Commissioner, and the ALJ thoroughly discussed the other evidence regarding Claimant's ability to stand and ambulate.

Second, the ALJ discounted the opinions because Dr. Seavers did not see Claimant on a consistent basis and performed very few exams of Claimant. (R. 31). The record indicates that Claimant saw Dr. Seavers in February 2014, March 2014, November 2017, and February 2018. (R. 1455, 1855, 1857). Additionally, Dr. Seavers called to refill Claimant's prescriptions in February and March 2013, April 2014, March 2015, June 2016, and March and November 2017. (R. 1455–56). The treatment relationship between a physician and claimant is one relevant factor to consider when evaluating opinion evidence. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). Dr. Seavers saw Claimant four times in four years and contacted to refill his prescriptions seven times. (R. 1455–56, 1855, 1857). The ALJ adequately explained that he discounted the opinions because Dr. Seavers saw Claimant infrequently.

Third, the ALJ discounted the opinions because they were inconsistent with Claimant's intact gait and work history. (R. 31). Claimant concedes that his gait was variable; at times, it was antalgic, and at other times, it was normal. Pl.'s Mem. [DE-23] at 11–12. Claimant had an abnormal gait or reported difficulty walking in April 2013, March 2015, January 2016, March 2016, November 2016, February 2017, January 2018, February 2018, and September 2018. (R. 529, 735, 829, 979, 1322, 1345, 1573, 1575, 1723). However, as the ALJ notes, Claimant was observed to have a normal gait three times in September 2017, seven times in October 2017, and twice in December 2017. (R. 1571, 1594, 1604, 1612, 1619, 1624, 1634, 1649, 1670, 1685). At worst, Claimant's gait was variable, as Claimant concedes, and that conclusion is inconsistent with Dr. Seavers's opinions that Claimant is 100% disabled from walking and ambulating. Moreover, Dr. Seavers's opinions are inconsistent with Claimant's testimony that he can walk a few hundred feet and stand for five to ten minutes, and his testimony that he works part time picking up trash and cleaning at a car dealership. (R. 31). Accordingly, the ALJ adequately explained that he

8

discounted Dr. Seavers's opinions because they were inconsistent with the medical and other evidence. The ALJ offered three sufficient reasons to discount the opinions, so he did not err in weighing them.

### 2. Dr. Seavers's January 2018 opinion

In January 2018, Dr. Seavers completed a check-box treating source statement in which he indicated that Claimant would be off task 100% of a typical workday; was likely to be absent from work a continuous amount, which was defined by the form as 67% to 100% of the time; could never lift or carry any weight; could sit for eight hours in a workday but could not stand or walk; could never use his feet; and could never perform postural activities. (R. 1716–19). The ALJ gave the opinion little weight because it "was given on a check-box form with no explanation or support," and it was inconsistent with the medical and other evidence, including Claimant's testimony. (R. 31).

First, the opinion was on a check-box form. An ALJ is entitled to give a form opinion less weight than a narrative opinion. *See Schaller v. Colvin*, No. 5:13-CV-334-D, 2014 WL 4537184, at *16 (E.D.N.C. Sept. 11, 2014) ("[S]ince the opinion is in the form of a questionnaire, the ALJ was entitled to assign it less weight than a fully explanatory and narrative opinion because such form opinions do not offer adequate explanation of their findings."); *Whitehead v. Astrue*, No. 2:10-CV-35-BO, 2011 WL 2036694, at *9–10 (E.D.N.C. May 24, 2011) (determining that a check-box form completed by a treating physician was not entitled to controlling weight where it was inconsistent with the physician's own treatment notes and gave no explanation or reasons for the findings). Here, several areas of the form invited narrative comment, but Dr. Seavers did not fill in those portions of the form. (R. 1717–19). For instance, where Dr. Seavers indicated that Claimant can never lift, carry, use his feet, or perform postural activities, the form states, "[i]dentify

9

the particular medical or clinical findings which support your assessment of limitations and why the findings support the assessment." (R. 1717–18). Dr. Seavers did not write anything in the blank lines following those prompts. Accordingly, the ALJ adequately explained that he discounted the opinion because it was issued on a check-box form with no explanation or support. (R. 31).

Second, the ALJ discounted the opinion because it was inconsistent with the medical and other evidence. *Id.* As discussed above, a complete inability to stand or walk is inconsistent with Claimant's variable gait, his testimony, and his work history. Additionally, a complete inability to lift or carry is inconsistent with Claimant's testimony that he can lift and carry twenty to twenty-five pounds at his job. (R. 54). The ALJ adequately explained that he discounted Dr. Seavers's opinion because it was inconsistent with the medical and other evidence. Accordingly, the ALJ offered two sufficient reasons to discount the January 2018 opinion, and he did not err in weighing the opinion.

### 3. Dr. Barrow's January 2017 opinion

On January 3, 2017, Dr. Barrow completed a check-box treating source statement form identical to the form completed by Dr. Seavers. (R. 1443–46). Dr. Barrow indicated that he treated Claimant infrequently since August 2016. (R. 1443). Dr. Barrow opined that Claimant would be off task more than twenty-five percent of the day; would be absent from work four or more days per month; could occasionally lift twenty pounds and never carry any weight; could sit for four hours, stand for two hours, and walk for one hour in an eight hour workday; requires the option to sit/stand at will; does not require an assistive device while working but does lean on a grocery cart while shopping; could occasionally reach and handle, frequently finger, never feel, and rarely push and pull with his arms and hands; could never use foot controls; could never climb ladders or

10

scaffolds or crawl; could rarely climb stairs and ramps, balance, stoop, kneel, and crouch; could occasionally rotate his head and neck; could never work around unprotected heights, moving mechanical parts, or extreme heat or cold; and could rarely operate a vehicle. (R. 1443–46).

The ALJ gave Dr. Barrow's opinion little weight. (R. 31). The ALJ noted that Dr. Barrow had seen Claimant infrequently, and "[h]is exams of the claimant were essentially unrevealing with noting the claimant was in no acute distress." (R. 30). The ALJ explained that Dr. Barrow "provided little explanation for his responses other than the diagnoses and what appears to be the claimant's subjective reports." *Id.* Additionally, the ALJ wrote that Dr. Barrow's opinion that Claimant can never operate foot controls is inconsistent with Claimant's testimony that he continues to drive and the exams in which Claimant had a normal gait, and Dr. Barrow's opinion that Claimant can never carry any weight is inconsistent with Claimant's ability to perform his activities of daily living and part-time job picking up trash at a car dealership. (R. 31). Finally, the ALJ noted that Claimant testified that he has neuropathy in his hands, but there was no objective evidence or clinical findings confirming neuropathy in the upper extremities. *Id.*

First, the ALJ discounted the opinion because it was inconsistent with Dr. Barrow's examinations of Claimant. In August 2016, Dr. Barrow examined Claimant and advised him regarding his diabetes and sleep apnea. (R. 1442). Dr. Barrow ordered an MRI of Claimant's spine. *Id.* The MRI revealed multilevel degenerative disc disease. (R. 1429). In September 2016, Dr. Barrow gave Claimant a B12 injection, and otherwise instructed Claimant to continue his medications and management. (R. 1428). In November 2016, Dr. Barrow noted that Claimant "continues to have ongoing back/neuropathy symptoms," but "[n]o other problems reported." (R. 1419). Dr. Barrow instructed Claimant to continue his current medications and management and return to the office in several months if not sooner. (R. 1422). In February 2017, one month after

11

Dr. Barrow completed the check-box form, Claimant reported to Dr. Barrow that his "[b]ack pain is about the same," and there were "[n]o other problems reported." (R. 1409). Dr. Barrow again instructed Claimant to continue his current medications and management and return to the office in several months, if not sooner. (R. 1412). In summary, Dr. Barrow's examinations of Claimant primarily address Claimant's diabetes and sleep apnea. Dr. Barrow noted that Claimant experienced back pain and neuropathy, but no other problems were reported. The ALJ adequately explained that Dr. Barrow's examinations were unrevealing and inconsistent with his opinion.

Second, Dr. Barrow's opinion is on a check-box form with little narrative explanation. As discussed above, an ALJ is entitled to give a form opinion less weight than a narrative opinion. *See Schaller*, 2014 WL 4537184, at *16. Claimant contends that the ALJ improperly discounted the opinion because, as the ALJ explained, it contained little narrative beyond Claimant's subjective reports. Pl.'s Mem. [DE-23] at 14–15. Claimant argues that his subjective reports can validly form the basis of a medical opinion, so it was erroneous for the ALJ to discount it. *Id.* Claimant cites *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1200 (9th Cir. 2008) in support of his position. In *Ryan*, an ALJ rejected a treating psychiatrist's opinion because it was based too heavily on the claimant's subjective complaints. *Id.* at 1199. However, the court noted that the psychiatrist's opinion was not, in fact, based on subjective complaints; it contained the claimant's reported symptoms in the "History of Present Illness" portion of the opinion, but the "Mental Status Examination" portion of the opinion contained clinical observations. *Id.* The Ninth Circuit held that the ALJ erred in rejecting the opinion because the psychiatrist "supports his ultimate opinion with his own observations." *Id.* at 1200.

The present case is distinguishable from *Ryan* because Dr. Barrow did not include clinical observations in his opinion. Dr. Barrow lists Claimant's diagnoses, writes that he leans on a

12

grocery cart while shopping, and writes that Claimant can walk fifty to one hundred feet without the cart at the store. (R. 1443–44). Additionally, Dr. Barrow notes that Claimant's "feet constantly feel like walking on rocks." (R. 1445). Dr. Barrow does not appear to include any clinical observations in his opinion, unlike the psychiatrist in *Ryan*. Accordingly, the ALJ appropriately noted that the opinion was supported by little narrative and appears to be based on Claimant's subjective complaints, and the ALJ could properly discount the opinion because it was on a checkbox form. *See Jeffries v. Berryhill*, No. 1:18-CV-51, 2019 WL 1005501, at *11 (M.D.N.C. Mar. 1, 2019) (holding that *Ryan* "actually supports the ALJ's decision" to discount an opinion where the opinion is based more on subjective complaints than on clinical observations), *adopted by* 2019 WL 2468241 (M.D.N.C. Mar. 29, 2019); *Harmon v. Berryhill*, No. 1:17-CV-417, 2018 WL 1936478, at *6 (M.D.N.C. Apr. 24, 2018) (distinguishing *Ryan* because the physician relied more on subjective complaints than on clinical observations); *Lawrence v. Astrue*, No. 5:10-CV-110-RLV-DSC, 2011 WL 6934796, at *2 n.3 (W.D.N.C. Dec. 30, 2011) (distinguishing *Ryan* and holding that an ALJ did not err in discounting an opinion because the doctor's "ultimate opinion was not adequately supported with her own observations").

Third, the ALJ discounted the opinion because it was inconsistent with the other evidence. The ALJ explained that Claimant's testimony that he continues to drive is inconsistent with Dr. Barrow's opinion that Claimant can never operate foot controls, and Claimant's job picking up trash and cleaning a car dealership is inconsistent with Dr. Barrow's opinion that Claimant can never carry weight. The ALJ also notes that Claimant maintained full strength, and there is no objective evidence or clinical findings confirming neuropathy in Claimant's upper extremities.[2]

---

[2] In September 2016 and January 2018, Dr. Barrow noted that Claimant reported neuropathy in his hands and feet. (R. 1425, 1447). Otherwise, the only diagnoses of neuropathy either do not specify whether it was in Claimant's upper or lower extremities, (R. 539, 631, 732, 830, 978, 1450, 1990), or specify that it was in Claimant's lower

13

(R. 1322, 1334). In fact, on January 10, 2017, one week after the opinion was issued, Claimant was noted to have intact upper extremity sensory, 5/5 motor strength in his upper extremities, and a normal, stable gait. (R. 1334). The ALJ adequately explained that he discounted the opinion because it was inconsistent with the medical and other evidence. Accordingly, the ALJ offered three sufficient reasons to discount the opinion, and he did not err in weighing Dr. Barrow's January 2017 opinion.

**B. The ALJ did not err in weighing whether Claimant's statements were consistent with the medical and other evidence.**

Claimant contends that the ALJ's alleged errors in weighing the medical opinions amount to a *per se* deficient assessment of Claimant's credibility, and Claimant also contends that the ALJ erred in discussing his work history. Pl.'s Mem. [DE-23] at 20–22.

First, as discussed above, the ALJ did not err in weighing the medical opinions. Accordingly, there is no *per se* error in the ALJ's consideration of Claimant's testimony based on his discussion of the medical opinions.

Second, Claimant contends that the ALJ should have determined that his work history bolsters his credibility because an attempt to work shows that a person would prefer to work rather than to receive disability payments. Pl.'s Mem. [DE-23] at 21. Claimant cites a case in which the court noted that an attempt to return to work supports a Claimant's credibility. *See Moncus v. Colvin*, No. 7:12-CV-76-BO, 2013 WL 4854518, at *3 (E.D.N.C. Sept. 11, 2013). However, the ALJ here was not *required* to find that Claimant's work history supports his testimony. To the contrary, the ALJ considered Claimant's work history and found that it conflicts with Claimant's alleged limitations. (R. 30). The ALJ was required to consider Claimant's prior work record in

---

extremities, (R. 566, 1857). Accordingly, as the ALJ states, there does not appear to be objective evidence or clinical findings relating to neuropathy in Claimant's hands.

14

evaluating the intensity and persistence of Claimant's symptoms. 20 C.F.R. § 404.1529(c)(3), 416.929. Additionally, the ALJ was required to consider evidence from attempts to work in formulating the RFC. S.S.R. 96-8p, 1996 WL 374184, at *5 (July 2, 1996). The ALJ did so here; he considered Claimant's work history in determining that Claimant's abilities were greater than alleged, and the ALJ discussed the December 2017 statement from Claimant's employer. (R. 30). It is not the role of the court to re-weigh the evidence or to substitute its judgement for that of the ALJ. *Mastro*, 270 F.3d at 176 (quoting *Craig*, 76 F.3d at 589). The ALJ considered Claimant's work history in discussing the RFC and the intensity and persistence of Claimant's symptoms, and he did not err in doing so.

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Judgment on the Pleadings [DE-22] is DENIED, Defendant's Motion for Judgment on the Pleadings [DE-24] is ALLOWED, and Defendant's final decision is affirmed.

So ordered, this the 16th day of September, 2019.

Robert B. Jones, Jr.
United States Magistrate Judge